NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO B.B.

No. 1 CA-JV 23-0219
FILED 05-23-2024

Appeal from the Superior Court in Maricopa County
No.  JD534377
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee Child B.B.*

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which
Presiding Judge Andrew M. Jacobs and Judge David D. Weinzweig joined.

**P E R K I N S**, Judge:

¶1    Shawntay T. ("Mother") appeals the juvenile court's order terminating her parental rights to Bethany (a pseudonym). The child's father ("Father") is not a party to this appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2    Mother and Father are the biological parents of Bethany, who was born in November 2017. Father physically, verbally, and emotionally abused Mother, and used Bethany as a shield against physical altercations with other people. Mother tried to get Father out of the house but could not because his name was on the lease.

¶3    Father invited his drug dealers, Carlus Davis and Issac McClure, to live with him, Mother, and Bethany. In August 2021, the dealers did Mother a "favor" by beating up and removing Father from the home because he abused Mother. Afterward, Mother allowed the dealers to remain in the home as protection from Father.

¶4    In September 2021, Davis violently assaulted Bethany causing significant bruising and abrasions. Mother tried to intervene, but Davis struck her. Davis then held Mother and Bethany hostage in their home for two days, and withheld food and water for 24 hours. Bethany and Mother escaped, contacted police, and were taken to the hospital. Medical personnel examined Bethany and reported extensive bruising, rotten teeth, matted hair, malnourishment, and developmental delays. DCS placed Bethany in out-of-home care and petitioned for dependency.

¶5    At a November 2021 hearing, Mother pled no contest to DCS's petition alleging neglect and failure to provide proper and effective parental care and control, so the juvenile court adjudicated Bethany dependent as to Mother. The court approved a case plan of family reunification.

¶6    DCS required Mother to participate in drug testing, but she rarely did. During the two-year dependency, she tested positive at least ten times and tested negative only four times. The last time Mother submitted to a drug test was January 2023.

¶7    Because she tested positive for methamphetamine, DCS informed Mother she needed to participate in substance abuse treatment. Mother completed a remote substance abuse treatment program through

Sage that did not require any testing. Mother tested positive for methamphetamine while participating in that program. DCS told Mother that she instead needed to participate in Terros. Terros reached out to Mother multiple times, but Mother never attended or completed a Terros intake or participated in further treatment.

¶8 Despite multiple positive tests, Mother largely denied using drugs. In a conversation with a DCS case manager, Mother mentioned that she relies on drugs to cope with her trauma and other issues.

¶9 DCS also provided trauma counseling through Family Service Agency, but Mother quit attending after two appointments. In April 2023, Family Service Agency closed Mother's counselling referral due to non-engagement.

¶10 Mother successfully completed two parenting classes recommended by DCS.

¶11 DCS failed to provide visitation for the first five to six months after removal. Initially, the delay was due to Mother's failure to provide documentation that she was negative for COVID-19. Visitation did not begin until two months after Mother submitted a negative test.

¶12 Mother did not consistently engage in visitation with Bethany. She often canceled or failed to show because she was in pain, had another conflict, or had transportation issues. DCS provided Mother with transportation to all supervised visits and treatment, and offered make-up visits when transportation issues arose. Mother has not had a visit with Bethany since September 2023 because she was in California and canceled most of her visits, causing the visitation referral to close due to over-cancellation.

¶13 Mother still lives in the same apartment and has encountered Davis there since Bethany's removal. Davis frequents the area because he has family nearby. When a case manager asked about the potential danger posed by continued interactions with Davis, Mother dismissed any potential danger because Davis "doesn't offer the drugs I use," causing DCS concern that Mother would not adequately protect Bethany from Davis or others.

¶14 In April 2023, DCS moved to terminate Mother's parental rights under Section 8-533(B)(3). The court held a termination hearing in November 2023. At the hearing, both of Mother's case managers testified that Bethany would be at risk if returned to Mother's care. One case

manager testified that she really wanted Mother to "get [Bethany] back" but her biggest concern was that Mother's unaddressed methamphetamine use made her unable to parent and Mother "disagreed with the whole premise that the child was in harm," "she just didn't get it," and Mother "wasn't going to protect [Bethany]" from the dangerous men she allowed in her life. Mother testified she was providing appropriate care for Bethany prior to removal.

¶15　　　　The juvenile court granted the motion to terminate on the fifteen months time-in-care ground. The court also found that severance was in the best interests of the child. Mother timely appealed and we have jurisdiction. A.R.S. § 8-235(A).

## DISCUSSION

¶16　　　　On appeal, Mother argues the court's findings were clearly erroneous because the evidence did not support removal on the fifteen months time-in-care ground. Mother does not challenge the court's best interests finding.

¶17　　　　When reviewing a juvenile court's termination order, we will accept the court's factual findings "if reasonable evidence and inferences support them." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023) (cleaned up). "Because the juvenile court is in the best position to weigh evidence and assess witness credibility," this Court views the evidence in the light most favorable to sustaining the juvenile court's decision; we will not reweigh the evidence. *See id.* at 478–79, ¶¶ 30, 32 (cleaned up). We will affirm "the juvenile court's legal conclusions regarding the statutory ground for termination . . . unless they are clearly erroneous." *Id.* at ¶ 31. And the juvenile court's legal conclusions are clearly erroneous only if "as a matter of law, no one could reasonably find the evidence to be clear and convincing." *Id.* (cleaned up).

¶18　　　　To terminate the parent-child relationship, the court must find at least one statutory ground under Section 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The juvenile court may terminate parental rights under the fifteen months time-in-care ground if it finds that: (1) "the child has been in an out-of-home placement for a cumulative total period of fifteen months or longer"; (2) "the parent has been unable to remedy the circumstances" that caused the out-of-home placement; and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). A court must also

"consider the availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8-533(D).

¶19 Mother argues she remedied the circumstances that caused Bethany's removal. She points to her completion of the Sage program and parenting classes in arguing that the court "failed to take into consideration all of the positive strides [Mother] made to reunify with [Bethany]." But the court expressly considered these efforts in its findings of fact. To the extent Mother asks us to value her own statements above other record evidence, "[w]e do not reweigh the evidence." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶20 Reasonable evidence supports the court's finding that DCS met its burden. DCS presented evidence that Mother failed to participate in the drug testing, substance abuse treatment, and trauma therapy provided by DCS. While Mother participated in the Sage program, DCS informed her this program was not sufficient. Despite numerous positive drug tests, Mother consistently denied using methamphetamine. She still lives in the same apartment where she has encountered Bethany's abuser. And Mother's testimony that she was providing appropriate care for Bethany prior to DCS involvement demonstrated that Mother does not understand the harm she caused Bethany.

¶21 The court did not err by finding that DCS established the fifteen months time-in-care ground by clear and convincing evidence.

## CONCLUSION

¶22 We affirm.

